# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21826-CIV-LENARD/O'SULLIVAN

CARLOS A. ALONSO CANO, individually
and as guardian for his son, ANGIE ALONSO
MOREJON, and as next friend of his minor
daughters, KATY ALONSO MOREJON and
<u>JANY LEIDY ALONSO MOREJON, and</u>
FE MOREJON FERNANDEZ individually,

      Plaintiffs,

v.

245 C & C, LLC and CFH GROUP, LLC,

      Defendants

<u>JURY TRIAL DEMAND</u>



FILED BY_____D.C.

JAN 1 4 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

---

## <u>COMBINED PLAINTIFFS' OBJECTION TO [ECF No. 143] and requesting THE COURT TO APPOINT A LAWYER AS A REASONABLE ACCOMMODATION FOR ANGIE ALONSO "ALONE", PURSUANT TO 29 U.S.C. § 794(a) OF THE REHABILITATION ACT, and RESPONDING TO DEFENDANTS'[ECF No. 139].</u>

I, Carlos A. Alonso Cano, (as a guardian of my disabled son) Angie Alonso Morejón and

supporting this motion say:

1. Recently, through [ECF No 143], the Honorable Judge Mr. John J. O'Sullivan, denied and

granted in part Plaintiffs' MOTION [ECF No. 138] to Appoint Counsel.

2. The Judge Mr. O'Sullivan said:

    o  *The plaintiffs' request for appointment of counsel under 42 U.S.C. § 3613(b)(1) is*
       ***DENIED***. <u>*This matter will be referred to the Court's Volunteer Attorney Program, where*</u>
       <u>*a volunteer attorney may accept the representation on a pro bono basis if so desired.*</u> *The*
       *Court spoke to one volunteer lawyer who is reviewing the case and will decide early next*

1



*Caal* { Document (30) pages
           attachments (1) page

*week whether to accept representation.* **There is no guarantee that this lawyer or any other volunteer lawyer will take the case.**

o *The plaintiffs shall have until* **Friday, January 24, 2020** *to file an affidavit stating their intentions to proceed pro se if they are unable to obtain an attorney.*

o *Judge Lenard has provided "Plaintiff Carlos A. Alonso Cano...until and including* **January 28, 2019** *to file Objections, if any, to the fee award issued by Judge O'Sullivan." Order (DE # 141, 1/10/19). See* <u>an error in the ORDER's date</u>.

o *Regardless of whether the Plaintiffs are able to retain private counsel on their own or a volunteer lawyer enters an appearance in this case, all named plaintiffs shall meet all* **other** *outstanding response deadlines by* **Friday, January 24, 2020**.

3. Defendants' MOTION [ECF No. 139] in opposition said:

- Defendants do not offer a position concerning that part of Plaintiffs' Motion seeking the appointment of counsel other than to note that each of the recent attempts to find counsel (as shown by the Motion's attachments) were requests made to unidentified attorneys to take on Plaintiffs' ***three*** <u>pending federal cases as a package deal</u>.". Plaintiffs have not established that they cannot find an attorney who is willing to accept their representation ***in this case only***.

- In the time following 11/18/19, Plaintiff ALONSO had enough time to file a Motion for Reconsideration [DE 94], a response to Defendants' Motion for Reconsideration [ED 99], a Motion to Compel Filing of Affidavits [DE 120] and a Motion to Deny Motion to Withdrawal of Attorney [ED 131] but not to devote to time to the more important task of finding a substitute attorney. <u>Plaintiff ALONSO's recent bout with kidney stones is indeed unfortunate but is not a reason and of itself to warrant the requested extension</u>.

4. With respect to the expression, "***three*** <u>pending federal cases as a package deal</u>." Let me explain to the Court and to Defendants' lawyer that I, CARLOS ALONSO, talked with many lawyers and always told to each one of them that the most important case is the instant case, because the time of suffering of my son and my family, and that all the lawyers were asked to **FIRST**, read the complaint for this case only, and decide only to take this case, not the other ones, but all the lawyers asked for the other cases' numbers, **to try to help me finding another lawyers**.

5. For the above reason, I was able to talk to several lawyers in a few days, but most of them, refused to take this specific case, because the complexity of the case (twelve counts), the deadlines and the possibility of divided lawyers' fees at the end of the case or in case of settlement.

6. It was professional and respectful of my part to not provide the information about the lawyers which decline representing us, because how you can read in some of those documents it was not permitted for me, but it is not relevant, since they were not able to represent us, it only shows to the Court and Defendants, that even having to respond timely to all the documents mentioned herein by Defendants, which in our opinion were filed as a shotgun, trying to make us to fail to respond to some of them after Mr. Lutfy was allowed to withdraw, we still spent the time to find a lawyer.

7. Contrary to what Defendants' lawyer said, I, CARLOS ALONSO went to many lawyer offices, because they did not respond the phone, an many of them were closed until after January 3, 2020, then, should be easy for the Court to infer that WE DID A GREAT EFFORT TO FIND A LAWYER, even in the middle of the holidays, something not mentioned by Defendants' lawyer.

8. On (January 9, 2020) we received another letter from an important lawyer's office, with a big experience litigating these cases, to which I, CARLOS ALONSO went personally, bringing some documents related with this specific case, but how you will be able to read, this lawyer also declined to represent us, for the reasons attached in their response. Today after requesting their permission, I was authorized to reveal their information. See (doc. # 1) attached herein.

9. With respect to my kidney stones and the expression:

- "Plaintiff ALONSO's recent bout with kidney stones is indeed unfortunate **but is not a reason in and of itself to warrant the requested extension**."

10. The above opinion from Defendants' lawyer only shows her attempt to gain an advantage by any way, her little human sensitivity to the possible disease of the opposite, in addition to us as pro se litigants, because we are at real disadvantage every time we must answer or introduce a document in Court, with respect to her who has more than thirty years of experience as a lawyer. In our opinion that doesn't give merits to the Defendants' lawyers, but quite the opposite.

11. As should be known the kidney stones cause a lot of pain, and I was myself in pain in many different moments, before I went to the hospital, but I was thinking those pains were caused by other reasons, but I always tried to comply by answering the documents on time after our former lawyer was allowed to withdraw, then there never was "A BAD INTENTION FROM OUR PART TO DELAY THIS PROCESS."

12. Imagine that at some day I could be very sick because of my kidney stones which still are inside my body, then, what will happen if I cannot continue pursuing this case for some time, what will say the Court or Defendants, that the case should be close or dismiss, because lack of representation of my part. "**No it cannot be the solution**", "**there will not be justice**", since we are trying to continue, and there are (13) plausible pleadings, which should be provided with legal judgement and relief.

13. With respect to the denial to appoint a counsel under the Fair Housing Statute, and referring this case to the pro bono program, we the Plaintiffs must remember to the Court that this case was in the list of the cases in that program and no one lawyer was able, or willing, or showed interest in representing us for many months.

14. Even Mr. Lutfy contacted me for another case, not for this one specifically because most lawyers in Florida are reluctant to take this type of cases most of them said to me, that these laws are very difficult for them, most of them had some experience to litigate discrimination based on the construction barriers, denying accessibility to the disabled persons, or for denying electronic aids for the disabled persons under ADA,  but most of them did not have any or enough experience about reasonable accommodations and modifications under the Fair Housing Act, and the ones that have the experience, are very busy.

15. Now I, CARLOS ALONSO, **will ask the Court to appoint an specific attorney for my disabled son alone, under The Rehabilitation Act, since my son was the principal person discriminated in this case, and the retaliatory actions from Defendants, specifically affected my disabled son, and all my family as a consequence of living with my son**.

16. I, CARLOS ALONSO, as the legal representative, speaking for my disabled son ANGIE ALONSO, will ask to THIS COURT, to refer this case to the Court's "Reasonable Accommodation Department" for them to appoint an attorney for ANGIE ALONSO "alone", and/or to refer this case to The Department of Justice" (Civil Rights Division), because I could fail in the representation of my son in this case. However, if this request is denied again, I would have no other option than to continue representing all my family.

### MEMRAMDUM OF LAW

17. To support this request, below I would describe the arguments provided by the Student Publications and Programs at Seattle University School of Law Digital Commons, what the Court could find at: http://digitalcommons.law.seattleu.edu/sjsj.

18. With respect to Defendants' lawyer expression:

- In the time following 11/18/19, Plaintiff ALONSO had enough time to file a response to Defendants' Motion for Reconsideration [ED 99],
  - In that RESPONSE [DE 99], I, CARLOS ALOSNO, expended many hours and drafted six (6) pages, but the Judge Ms. Joan A. Lenard said "Plaintiff Carlos A. Alonso Cano filed a pro se Response to Defendants' Motion <u>which was unhelpful</u>. (See D.E. 99.) <u>Thus, the Court's citations to a "Response" refers only to the remaining Plaintiffs' response, (D.E. 103)</u>, **which was the response from former lawyer Mr. Lutfy, who only needed three pages to draft a good response**.

19. The above situation is another argument in which we, **I am supporting** this new request, **because if it is not granted, this case will be in danger to get to the trial if no counsel is representing at least our disabled son**.

20. <u>The ADA is one "Avenue to Appointed Counsel"</u>. The United States is witnessing a growing advocacy for universal "civil Gideon," the constitutional right to free legal counsel for low-income people involved in civil litigation. The right to counsel has long been recognized in the criminal context in this country. In the civil arena, however, those who cannot afford to hire attorneys are left to fight to protect their rights on their own.

21. Certain mental disabilities prevent a person from comprehending what is happening in the courtroom or mustering a case. Some examples come readily to mind: mental retardation, dementia, schizophrenia, and severe depression. Similarly, certain physical disabilities sap energy or vitality to the extent that a person is unable to participate meaningfully in court.

22. The Americans with Disabilities Act (ADA) is the central law recognizing this reality for those with such disabilities. **Complementing the ADA and its predecessor, the federal Rehabilitation Act, some state anti-discrimination statutes provide enhanced protections for individuals with disabilities in the court system**.

23. People whose disabilities prevent them from understanding the proceedings or vigorously participating in their cases need accommodations to access the court system, just as do those with disabilities that require ramps, interpreters, and readers. Some authors, consider that one of the most important reasonable accommodation under Title II of the ADA, under the Rehabilitation Act, and under state anti-discrimination statutes for a disabled pro se litigant as ANGIE ALONSO is an attorney.

24. Only an attorney can provide the knowledge, energy, strategy, translation, and understanding to mount a case or provide a defense for those whose disabilities block their ability to do so pro se.

25. ADA accommodations are available only to persons with perceived or actual disabilities that affect their ability to participate in the judicial system, the ADA affords a broader remedy because its provisions are not "needs based"; that is, ADA accommodations are available to rich and poor alike, and are not restricted by a litigant's ability to pay for an attorney accommodation. No financial application is required to receive an ADA accommodation.

26. Individuals with disabilities are by and large more likely to be poorer than the population as a whole. Thus, the impact of providing legal representation as an accommodation will most likely benefit those who are financially most in need. As a result, those authors, argue that all civil

litigants with disabilities that prevent them from understanding or participating in the legal system should receive appointed counsel.

**COURTS VIOLATE THE ADA or THE REABILITATION ACT BY DENYING APPOINTED COUNSEL AS A REASONABLE ACCOMMODATION FOR CERTAIN DISABLED CIVIL LITIGANTS**.

27. Before the enactment of the ADA, Congress recognized that current laws were "'inadequate' to combat the 'pervasive problems of discrimination that people with disabilities are facing.'"As a result of this discrimination, Congress enacted the ADA in 1990, seeking to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. Title II addresses discrimination in public services and applies to state and local governments, their departments, agencies, and other instrumentalities. In fact, Title II covers all public agencies, regardless of whether they receive federal financial assistance.

28. Denying appointed counsel for certain disabled civil litigants violates Title II, the Public Services section, of the ADA. Title II prohibits discrimination against disabled individuals in public services. Specifically, Title II provides that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

29. State courts, as public entities, must comply with Title II of the ADA by ensuring that all of their services, programs, and activities are available to qualified individuals with disabilities. **Federal courts must meet the same standard under Section 504 of the Rehabilitation Act**. In fact, Title II of the ADA was "expressly modeled after" sec. 504 of the Rehabilitation Act of 1973 and extends those principles to state and local governments. Failing to make state court

facilities available to disabled individuals violates the ADA, **while failing to make federal court facilities available violates the Rehabilitation Act**.

30. The critical importance of the ADA in providing individuals with disabilities access to the justice system is clearly illustrated by the facts and legal arguments in *Tennessee v. Lane*, which is currently awaiting a decision by the U.S. Supreme Court.

31. The Sixth Circuit held that the Eleventh Amendment immunity of the states to private damages suits did not apply to claims under Title II of the ADA, when the claim involved the Due Process Clause. Parties in civil litigation have an analogous due process right to be present in the courtroom and to meaningfully participate in the process unless their exclusion furthers important governmental interests. . . . These guarantees are protective of equal justice and fair treatment before the courts. The evidence before Congress when it enacted Title II of the Americans with Disabilities Act established that physical barriers in government buildings, including courthouses and in the courtrooms themselves have had the effect of denying disabled people the opportunity to access vital services and to exercise fundamental rights guaranteed by the Due Process Clause. We argue that the denial of equal justice and fair treatment before the courts applies with equal vigor when a person's mental or physical disabilities prevent him not from mounting the stairs to the courtroom, but from mounting the case itself. **Here, the appropriate and reasonable accommodation is attorney representation rather than elevator access to the court proceedings**.

32. **The ADA and the Rehabilitation Act attempt to provide whatever services or actions are necessary to ensure that disabled persons are not discriminated against as a result of their disabilities.**

33. Necessary accommodations include effective courtroom communications: "a public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others." **Appointment of counsel, which would allow the individual with a disability to communicate with the court, could qualify as a reasonable accommodation because it is similar to the following sample aids and services provided in the regulations**:

Qualified interpreters, note takers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments [for example, talking calculators and real time transcription]; Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services or actions.

34. **This extensive list and the final, separate category for "other similar services or actions" suggest a broadly-based evaluation of appropriate auxiliary aids and services**. These services include the assistance of trained individuals, such as sign-language interpreters for the deaf and readers for the blind. **Appointed counsel for some litigants with certain disabilities would serve the same interpretive function and would allow the litigants to participate in the proceeding**s.

35**. Appointed counsel would not be necessary for all litigants who suffer from certain disabilities. The degree of impairment matters, as does the specific setting and alternative accommodations available**. For this reason, the ADA does not prescribe the appropriate accommodation for each disability because an appropriate accommodation for one person might be inappropriate for another.

36. The public entity, however, must consider available options and furnish "appropriate auxiliary aids and services where necessary. **Providing an attorney for litigants with these disabilities is not only appropriate but also reasonable in terms of cost, and would neither create an "undue burden" for the courts nor "fundamentally alter" the nature of the court system**. "Title II ensures that the refusal to accommodate an individual with a disability is genuinely based on unreasonable cost or actual inability to accommodate, not on inconvenience or unfounded concerns about costs."

37. **Other considerations also indicate that providing attorneys for litigants with certain disabling conditions would not bankrupt the system. First, the number of litigants with such disabilities is relatively small compared to the pool of indigent civil litigants**.

38. **For example, Justice Earl Johnson notes that other countries have provided free counsel as a matter of right in civil cases**, as have several pre-paid legal insurance programs in this country. **Bidran and Ben-Cohen argue that providing counsel for indigent civil defendants would save society money in the long run by reducing litigation and eliminating the delays prevalent in pro se representation**. This prediction is consistent with a study finding that funding legal services programs saves significant state funds. Finally, additional societal

benefits, perhaps worth more than the cost, could accrue, **with the primary benefit being restored confidence in the justice system**.

39. **In 1948, Congress granted the federal courts statutory authority to appoint counsel for indigent civil litigants. The Third Circuit Court of Appeals interpreted** <u>**28 U.S.C. § 1915**</u> **as affording district courts "broad discretion" to determine whether appointment of counsel in a civil case would be appropriate**.

40. **The Third Circuit rejected several courts' interpretations that appointment of counsel in civil cases should be granted only under "exceptional circumstances." Yet even under the exceptional circumstances analysis, courts have found that, in the balance of factors, the standard was met to allow appointment of counsel. For example, the Fourth Circuit found exceptional circumstances existed where the plaintiff lacked education in legal matters, his incarceration status prevented contact with witnesses, the testimony was conflicting, and the plaintiff lacked training in cross-examination**.

41. In determining whether a district court should order appointment of counsel, the Third Circuit articulated a number of factors to consider, without reference to the stringent exceptional circumstances standard. **The threshold consideration here is whether the plaintiffs' claims have "arguable merit in fact and law." If the court determines a claim has sufficient merit, then it must consider factors regarding the plaintiffs' ability to present her case, such as "education, literacy, prior work experience, and prior litigation experience."**

42. **The court should also weigh the complexities of the legal issues and the need for factual investigation. The appointment of counsel may be appropriate when the likelihood exist**

**that extensive discovery or expert testimony will be required, or that credibility determinations will play a significant role in the trial**.

43. The Third Circuit's test, known as the Tabron test, has been adopted by one court in a Title II ADA action. While the court ultimately held that the plaintiff was not entitled to appointment of counsel, the court found her claim sufficiently meritorious to warrant consideration of the additional factors relevant to the appointment of counsel.

44. **Arguments for appointed counsel may prevail, for example, when expert testimony is required, the case presents unusually complex issues, and the plaintiff does not have a college education and has a mental disability that prevents her from comprehending complex matters in the courtroom. When some of these circumstances exist, plaintiffs should request the assistance of counsel.**

45. Title VII of the Civil Rights Act of 1964119 also permits courts to appoint counsel for the plaintiff on request in an employment discrimination suit. **In making the determination, courts consider three factors: the financial resources of the plaintiff, efforts made to secure counsel, and the merit of the plaintiff's claim**.

46. While the United States struggles for incremental advancements, many developed countries provide appointed counsel for indigent civil litigants, even if they are not disabled. Courts in these countries ground their analyses in statutes, as in England; in constitutions, as in Switzerland; or in a combination of the two, as in Germany. **Moreover, the European Convention of Human Rights "guarantees the right to counsel in civil cases, recognizing it as a fundamental right.**

47. **As Justice Earl Johnson noted, United States Supreme Court Justices Ruth Bader Ginsburg, Sandra Day O'Connor, and Anthony Kennedy, while speaking at conferences, have all suggested that the Court is willing to consider jurisprudence from other nations**. In fact, as Justice Johnson observed, Justice Kennedy, writing for a six-justice majority in Lawrence v. Texas, "relied heavily on foreign decisions.

48. **With so many countries recognizing that the right to counsel in civil cases is fundamental, courts in the United States should follow their lead and conclude, at the very least, that a disabled individual who cannot understand or participate in court proceedings is entitled to an attorney**. While the average indigent civil litigant has some understanding of court processes and proceedings, the person with certain disabilities does not. **In this respect, the United States cannot continue to lag so far behind the other major Western nations of the world**.

49. Three additional notions of fairness, apply with equal or greater force in the present context.

> ➢ First, in some contexts, civil litigants who may be more disadvantaged by lack of counsel than criminal litigants. For example, the loss of custody of a child or civil commitment as an incompetent, may, in the long run, be far more agonizing than incarceration for a short period of time,
> ➢ Second, where the state brings a suit against a disabled defendant to deprive access to food, shelter, children, or health care, the civil preponderance-of-the evidence standard is much easier to prove than the beyond-a-reasonable doubt standard for criminal cases. As a result, in a civil suit, the state could more easily prevail and deprive a person of critical benefits.
> ➢ Finally, citizens lose faith in our justice system when it seems to be unfair. Few acts are more unfair than denying the appointment of counsel for a civil litigant whose disability prevents his/her from understanding or participating effectively in the proceedings.

50. **ADA coordinators in the courts and in administrative agencies should be assigned the task of evaluating the need for an attorney accommodation and creating an internal appeal**

process for challenging an accommodation denial in the same way other disability accommodations are evaluated and appealed.

51. **Judges and administrative hearing officers—the people who may be in the best position to initially identify whether a litigant needs an attorney accommodation—should be trained to identify and refer litigants to courthouse ADA coordinators for arranging representation.**

52. **With full civil Gideon still on the distant horizon, advocates should use the ADA and the Rehabilitation Act to argue that appointed counsel is necessary for civil litigants with certain disabilities. Both state and federal courts are required to make their services equally accessible to those with disabilities.**

53. Although alternative aids or services might be appropriate for some of these litigants, others will require attorney representation. **Appointed counsel for these civil litigants is not only appropriate but also reasonable.**

54. The number of these litigants is relatively small when compared to the total number of indigent civil litigants in the country. **The costs seem even smaller compared with the almost certain loss of crucial needs, such as food, housing, income benefits, and property if the litigant is without attorney representation.**

55. **With all the major European nations and the European Court of Human Rights granting free attorney representation in civil cases, the United States must be able to protect its most vulnerable civil litigants: those whose disabilities prevent them from understanding or fully participating in judicial and administrative proceedings.**

56. *See*, *Soto v. City of Newark*, 72 F. Supp. 2d 489, 494–95 (D.N.J. 1999) (holding that the court violated Title II of the ADA when deaf litigants were denied a sign-language interpreter at municipal court wedding).

57. *See* , e.g., *Duvall v. County of Kitsap*, 260F.3d 1124, 1135 (9th Cir. 2001); Bravin v. Mount Sinai Med. Ctr., 58 F. Supp. 2d 269, 273 (S.D.N.Y. 1999) (holding that a hospital violated the ADA when it denied a deaf father the use of a qualified interpreter during Lamaze classes, which he attended with his wife).

58. *See, DeVinney v. Me. Med. Ctr*., 1998 WL 271495, 1 (D. Me. 1998) (approving aconsent decree whereby Maine Medical Center would provide appropriate auxiliary aidsand services where such aids and services were necessary to ensure effective communication with persons who were deaf).

59. *See*, ADA Title II Technical Assistance Manual II–7.1000 (2003), at http://www.usdoj.gov/crt/ada/taman2.html (last viewed Feb. 29, 2004).

60. *See*, Galloway v. Super. Ct., 816 F. Supp. 12, 18 (D.C. Cir. 1993) (courtsystem is a "public entity" under the ADA and must provide reasonable accommodations for juror's visual limitations).

61. *See*, Americans with Disabilities Act of 1990, Pub. L. No. 101–336 (codified as amended at 42 U.S.C. §§ 12101–12213 (2000)).

62. *See*, 29 U.S.C. §§ 701–796l (2003)

63. See also Saunders v. Horn, 960 F. Supp. 893, 899 (E.D. Pa. 1997) (finding that management of court systems is a state or local responsibility of great importance that is routinely understood

to be covered by the ADA).

64. Galloway, 816 F. Supp. at 18 (holding that a court system is a "public entity" under the ADA.

65. People v. Caldwell, 603 N.Y.S.2d 713, 714 (N.Y. Crim. Ct. 1993) (finding that the court system, as a government entity, is required pursuant to the ADA to make all of its services, programs, and activities available to qualified individuals with disabilities). The Department of Justice regulations state that the ADA's coverage extends to "all services . . . made available by public entities." 28 C.F.R. § 35.102(a) (2003).

66.  Sec. 504 provides, "**No otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.**" 29 U.S.C. § 794

67. **Sec. 504 of the Rehabilitation Act and the ADA impose identical requirements**.

68. *See, Lincoln Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998).  The remainder of the article refers primarily to state courts and the ADA, but the analysis applies equally in federal courts.

69. See, *Adam Cohen*, Can Disabled People Be Forced to Crawl Up the Courthouse Steps?

70. Pursuant to 28 C.F.R. § 35.150(a)(3) (stating that the public entity has the burden of proving that compliance would require a "fundamental alteration" or "undue financial or administrative burdens").

71. *See*, "<u>**Nondiscrimination on the Basis of Disability in State and Local Government**</u> <u>**Services**</u>", pursuant to 28 C.F.R. § 35.106 (2003); 56 Fed. Reg. 35694 (1991).

72. *See*, *Deborah J. Cantrell*, Justice for Interests of the Poor: The Problem of "<u>Navigating the</u> <u>System Without Counsel</u>", 70 FORDHAM L. REV. 1573, 1574, 1581 (2002); Deborah L. Rhode, Access to Justice, 69 FORDHAM L. REV. 1785, 1816 (2001).

73. *See*, *Cantrell*, supra note 73, at 1578–80 (arguing that simplification, though admirable, is insufficient for addressing the needs of indigent civil litigants); Rhode, supra note 73, at 1816.

74. *See*, e.g., *Rhode, supra note 73, at 1787–88; Earl Johnson, Jr., Toward Equal Justice*: Where the United States Stands Two Decades Later, 5 MD. J. CONTEMP. LEGAL ISSUES 199, 210– 21 (1994) [hereinafter Toward Equal Justice].  "**There is no reasonable argument that providing legal representation as an accommodation within the court system would fundamentally alter the nature of that public entity. Attorneys regularly represent litigants in the court setting, so having representation for a disabled litigant would not be a change in the system.**"

75. *See*, e.g., *Nelson v. Thornburgh*, 567 F. Supp. 369, 381 (E.D. Pa. 1983), aff'd, 732 F.2d 146– 47 (3d Cir. 1984). Decisions based on the Rehabilitation Act provide guidance because the ADA regulations "borrowed" the "reasonable accommodation" and "undue hardship" definitions from the regulations promulgated by the EEOC under the Rehabilitation Act.

76. *See Bindra & Ben-Cohen*, supra note 83, at 32 (**noting that "forty-seven percent of Americans feel that the legal system is biased against the poor and minorities, and nearly ninety percent feel that the affluent and corporate have the upper hand**"

**less than 12% of low-income clients with public benefits disputes receive legal representation of any kind**).

78. **State agencies are "public entities" under the ADA. 42 U.S.C. § 12131(1) (2000). <u>Federal agencies are "public entities" under the Rehabilitation Act. 29 U.S.C. § 794(a) (2000).</u>**

79. *See*, Joan Grace Ritchey, Limits on Justice: **The United States' Failure to Recognize a Right to Counsel in Civil Litigation**, 79 WASH. U. L.Q. 317, 331–32, 336–38 (2001).

80. See, Johnson, New Melody ?, supra note 3 at 222–29 (**comparing the legal bases for the right to appointment of counsel in European countries with those in the United States**).

81. See, *Tabron*, 6 F.3d at 155 (**stating that "nothing in this clear language [of the statute] suggests that appointment is permissible only in some limited set of circumstances. Nor have we found any indication in the legislative history of the provision to support such a limitation.**" The court refers to 28 U.S.C. § 1915(d) (2000) "<u>the court may request anattorney to represent any such person unable to afford counsel</u>.").

82. To this day no lawyer has communicated with me, showing interest in representing us in this case, therefore, I have no option but to file this document.

**THEREFORE, I, CARLOS ALONSO, as a legal representative, and speaking for ANGIE ALONSO MOREJON, would request, that this Court TO APPOINT AN ATTORNEY FOR ANGIE ALONSO "ALONE", AS A REASONABLE ACCOMMODATION UNDER THE STATUTE <u>29 U.S.C. § 794(a)</u> (2000) of THE REHABILITATION ACT OR REFER THIS CASE TO THE DEPARTMENT OF JUSTICE (Civil Rights Division).**

Respectfully submitted on January 15, 2020

1. - Carlos A. Alonso Cano (individually) _____

Address: 2500 West, 56th Street, Apt # 1301, Hialeah, Florida. 33016
Email: carloscaco3@yahoo.com;
Phone: (214)-962-7965

<u>CERTIFICATE OF SERVICE</u>

I, CARLOS ALONSO, hereby certify that on January 15, 2020, personally filed the foregoing

document with the Clerk of the Court. I also certify that a copy of the foregoing document is

being served to Mrs. Leslie W. Langbein, via email to langbeinpa @bellsouth.net



**DISABILITY
INDEPENDENCE
GROUP**

2990 SW 35th Avenue ✳ Miami, FL ✳ 33133
TEL: 305-669-2822  FAX: 305-442-4181
www.justdigit.org
*Expanding Opportunities for Persons with Disabilities*

January 9, 2020

BY E MAIL
carloscaco3@yahoo.com

Carlos Alonso

  Re: Your Potential Claim with Disability Independence Group
     DIG Matter No. 2176

Dear Mr. Alonso,

We had the opportunity to review the information you were kind enough to give the intake personnel in consideration of your case. Based upon our review of your case, we would not be able to assist you in this matter.

Unfortunately, our office is currently handling many cases, and does not have enough resources at the moment to assist each person who needs assistance. We would suggest that you contact the Florida Bar Lawyer Referral Service at (800) 342-8011, or the Dade County Bar Association at (305) 371-2646.

Please be advised that all cases have a deadline in which a lawsuit must be filed, so I would advise to seek other legal assistance immediately, if you believe that you have a claim. We wish you the best of luck in your case.

Thank you again for your interest in Disability Independence Group.

     Very Truly Yours,

     *s/ Matthew W. Dietz*

     Matthew W. Dietz, Esq.
     Litigation Director

MWD/sm

