UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21826-CIV-LENARD/O'SULLIVAN

CARLOS A. ALONSO CANO, individually
and as guardian for his son, ANGIE ALONSO
MOREJON, and as next of friend of his minor
daughters, KATY ALONSO MOREJON and JANY LEIDY
ALONSO MOREJON and FE MOREJON FERNANDEZ,
individually,

       Plaintiffs,
vs.

245 C & C, LLC and CFH GROUP, LLC.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the "Urgent Motion" to (1) Stop Plaintiffs' Actual and Imminent Eviction or in the Alternative, (2) Request a Temporary Restraining Order and/or a Preliminary Injunction to Maintain the Status Quo During COVID 19 Pandemic (DE# 384, 11/20/20) filed by the plaintiffs. This case was referred to the undersigned for all pretrial matters pursuant to the Paperless Order Referring Case (DE# 129, 12/27/19). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the "Urgent Motion" to (1) Stop Plaintiffs' Actual and Imminent Eviction or in the Alternative, (2) Request a Temporary Restraining Order and/or a Preliminary Injunction to Maintain the Status Quo During COVID 19 Pandemic (DE# 384, 11/20/20) be **DENIED** for the reasons stated herein.

**BACKGROUND**

On November 20, 2020, the plaintiffs filed an "Urgent Motion" to (1) Stop Plaintiffs' Actual and Imminent Eviction or in the Alternative, (2) Request a Temporary Restraining Order and/or a Preliminary Injunction to Maintain the Status Quo During COVID 19 Pandemic (DE# 384, 11/20/20) (hereinafter "Motion"). On November 30, 2020, the plaintiffs filed a supplement and the defendants filed their response. See "Suplenet [sic] Document to [ECF. No. 384], "Urgent Motion" to (1) Stop Plaintiffs' Actual and Imminent Eviction or in the Alternative, (2) Request a Temporary Restraining Order and/or a Preliminary Injunction to Maintain the Status Quo During COVID-19 Pandemic (DE# 391, 11/30/20) (hereinafter "Supplement"); Defendants' Verified Response to Plaintiffs' Motion to Stay Eviction and for Preliminary Injunction to Maintain Status Quo [384] (DE# 394, 11/30/20) (hereinafter "Response"). On December 3, 2020, the defendants filed a notice concerning the status of the case pending before the Third District Court of Appeals. See Notice of Filing (DE# 397, 12/3/20).

This matter is ripe for adjudication.

**ANALYSIS**

The plaintiffs seek an order staying the state court eviction proceedings or, in the alternative, an injunction prohibiting the defendants from taking any action to evict the plaintiffs while the instant action remains pending and during the COVID-19 pandemic. Motion at 1-2.

**A.    The Court's Prior Order (DE# 25)**

The plaintiffs filed a similar motion on May 29, 2019 which the District Court denied in a detailed 20-page Order Denying Plaintiff's Motion to (1) Stay State Court

Eviction Proceeding, or in the Alternative, (2) Request a Temporary Restraining Order and/or Preliminary Injunction to Maintain the Status Quo (D.E. 13) (DE# 25, 6/25/19) (hereinafter "Order").

This Court determined that it did not have the authority to grant the relief sought by the plaintiffs because:

> **it [was] without authority to stay or enjoin the state court action because the state court acquired in rem jurisdiction over the property first**. Mercer v. Sechan Realty, Inc., 569 F. App'x 652, 656 (11th Cir. 2014). In Mercer, Sechan Realty filed an eviction action in state court against Mercer, a holdover tenant. Id. at 653. Mercer asserted counterclaims under the Florida FHA alleging that Sechan Realty was improperly attempting to evict her after she requested a reasonable accommodation for her disability. Id. at 654. The state court ultimately entered a default judgment for eviction and later dismissed Mercer's Florida FHA claims for failure to exhaust administrative remedies. Id. The day after the state court entered a default judgment for eviction, Mercer filed a complaint in federal district court alleging claims under the federal FHA. Id. She also filed an emergency motion for a TRO and/or preliminary injunction, seeking to enjoin Sechan Realty from evicting her pending the resolution of her federal FHA claims. Id. The district court granted the motion and issued a TRO. Id. Sechan Realty appealed, arguing that the Anti-Injunction Act barred the district court from granting Mercer's request for an injunction. Id. The Eleventh Circuit agreed with Sechan Realty and reversed. Id. at 656. Relevant here, the Eleventh Circuit found that the district court did not have authority to enjoin enforcement of the state court's default eviction judgment because "the state court acquired in rem jurisdiction over the property at issue first." Id. (citing In re Bayshore Ford Truck Sales, Inc., 471 F.3d at 1250-51).
>
> Here, too, **the state court acquired in rem jurisdiction over the property first because the eviction action was filed before the federal lawsuit**. See id. **Accordingly, the Anti-Injunction Act prohibits the Court from staying or enjoining the state court eviction action**. See id.; see also Gomez v. Wash. Mut. Bank, Case No.: 17-cv-60960-WPD, 2017 WL 6949244, at *1 (S.D. Fla. Apr. 13, 2017) (denying motion to enjoin state court eviction proceeding because such relief was barred by Anti-Injunction Act).

Order (DE# 25 at 9-10) (emphasis added); see also id. at 12 (stating that "[i]n sum, the Court finds that the Anti-Injunction Act bars the Court from staying or enjoining the state

3

court eviction action.").

The Court further found that the Anti-Injunction Act prohibited the Court from entering a temporary restraining order or preliminary injunction prohibiting the defendants from evicting the plaintiffs during the pendency of the federal court proceedings. Order at 12. Additionally, the Court found that "even if the Anti-Injunction Act did not prohibit the Court from granting the requested relief," the Court would not enter a temporary restraining order or preliminary injunction because the plaintiffs had not met their burden of proof. Id. at 12.

Specifically, the Court found that the plaintiffs had failed to show a substantial likelihood of success on the merits:

> To obtain a temporary restraining order, a party must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (citing Ingram v. Ault, 50 F.3d 898, 900 (11th Cir. 1995)). The same elements are required to grant a preliminary injunction. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246 (11th Cir. 2002)).
>
> ***
>
> The Court finds that Plaintiff has failed to establish a likelihood of success on the merits. Plaintiff filed a housing discrimination complaint with HUD who investigated the claim and determined "that no reasonable cause exists to believe that a discriminatory housing practice has occurred." (D.E. 20-2 at 10.) Plaintiff also filed a housing discrimination complaint (or complaints) with the Florida Commission on Human Relations who investigated Plaintiff's claims and issued a determination of "No Cause." (Id. at 3-8.) **Given that two administrative agencies have investigated Plaintiff's housing discrimination claims and found no reasonable cause to believe a discriminatory housing practice occurred, the Court finds that Plaintiff has failed to establish a substantial likelihood of success on the merits**. Gomez, 2017 WL 6949244, at *1 (finding that even if the Anti-Injunction Act did not bar the district court

4

> from enjoining the state court eviction proceedings, the plaintiff was not entitled to a preliminary injunction because he had not established a substantial likelihood of success on the merits).

Id. at 12-14 (footnotes omitted; emphasis added).

The Court also found that the plaintiffs had failed to show irreparable injury:

> Assuming arguendo that the eviction is actual and imminent, and not merely speculative, **Plaintiff has provided no evidence that it is irreparable—e.g., that he is unable to find alternate housing and/or that his injury cannot be compensated by monetary damages**. See Volis v. City of Los Angeles Hous. Auth., Case No. CV 13–01397 MMM (SPx), 2014 WL 12704885, *3-4 (C.D. Cal. Jan. 7, 2014) (finding that the plaintiff had failed to "adduce evidence" establishing that eviction from his apartment was an actual and imminent irreparable injury where, inter alia, he had "not demonstrated that he cannot find alternate housing; at most, he has argued that it will be time-consuming and difficult to do so"). In Johnson, the Eleventh Circuit held that the plaintiffs would "suffer irreparably if they must live in inadequate, often health endangering housing for any period of time as a consequence of a wrongful ejectment." 734 F.2d at 789. **Plaintiff has not alleged, much less established, that he and his family will be required to live in inadequate housing if they are unlawfully ejected from the Villas. For these reasons, and because Plaintiff has failed to cite any case law finding the threat of eviction from a rented apartment constitutes an irreparable injury under facts analogous to those presented here, the Court finds that Plaintiff has failed to carry his burden of establishing this requirement**. Canal Auth., 489 F.2d at 573 (noting that "a preliminary injunction is an extraordinary remedy, not normally available unless the plaintiff clearly carries his burden of proof as to its prerequisites").

Order (DE# 25 at 18-19) (emphasis added).

**B.    The Instant Motion**

The plaintiffs argue that their "likelihood of prevail[ing] on the merits is very high." Motion at 18. The plaintiffs note that the operative complaint includes violations that occurred after the HUD investigation was completed on December 26, 2017. Id. at 17-18. Additionally, in their Supplement, the plaintiffs accuse the defendants of hiding "important evidence" from the HUD investigator "with the goal to change the outcome of the HUD investigation and of the eviction case." Supplement at 1.

5

The plaintiffs also allege various perceived harms that could occur if the plaintiffs are evicted from their apartment. For instance, the plaintiffs do not believe they will be able to find an apartment with large glass doors/windows in the bedroom and living room which would allow Angie Alonso to see outside the apartment. Motion at 6-7. Mr. Alonso states that in 2013, he "went to look for another apartments [sic] in this area, and was not possible [sic] to find an apartment having the same location, with two big elevators like here, in which it is very easy to fit the wheelchair of ANGIE ALONSO, allowing to move him, in one of them when the other was broken." Id. at 7. The plaintiffs do not discuss what additional efforts they have undertaken in finding suitable housing. Moreover, 2013 was approximately seven years ago and it is likely that the inventory of available apartments is different in 2020.

The plaintiffs speculate that it "will be almost impossible" in another apartment complex to obtain "a reserved disabled parking space for ANGIE, since all the properties close to [the plaintiffs] also do not have the number of disabled parking that this property has." Motion at 8. The plaintiffs further speculate that they will not "have the benefit of school transportation," helpful and trustworthy neighbors or a large swimming pool at another apartment complex. Id. The plaintiffs do not believe the corridors would be as "wide and safe" in another apartment complex "with concrete walls and not the metal bars, which allow[ ] [the plaintiffs] to take ANGIE ALONSO out . . . without danger or fear of falling." Id. at 9. The plaintiffs even contemplate the possibility of harm from a stray bullet, if they are forced to lease a first-floor apartment. Id. (stating that "[a]nother good reason to keep ANGIE ALONSO, in his current bedroom, is that if he is removed and can only find an apartment on the ground floor, he

6

would be disturbed by the noise of the cars circulating near his new apartment or he or his mother taking care of him all day, could also be reached by a lost bullet, which would be almost impossible to happen in his current bedroom, by the angle of travel of that bullet.").

The plaintiffs also assert, in a conclusory manner, that they could become homeless if they are evicted. Motion at 9. However, the plaintiffs do not allege that they would have any financial hardship in obtaining a new apartment. Rather, the plaintiffs believe it "will be almost impossible that they could find an appropriate apartment for the family of five (5), as soon as they need it, and with the same conditions that ANGIE ALONSO has in his current apartment, in the area that is very suitable for him." Id.

The plaintiffs also argue that moving Angie Alonso from his current apartment, where he has been residing for approximately nine years, would threaten his emotional and physical health, including risking exposure to COVID-19. Motion at 19.

The defendants note that "Plaintiffs do not attach any medical records to support their contentions that moving will cause ANGIE to fall into an "irreversible depression that endangers his life and it may give him a cardiac arrest or stroke from a rise in blood pressure which is happening to him now repeatedly." Response at 5 (quoting Motion at 15). The defendants further note that the plaintiffs were unable to establish that environmental changes would have a detrimental effect on Angie Alonso based on the testimony of treating physician, Dr. Annette Fornos. Id. at 5-6. Additionally, the defendants argue that the plaintiffs' expert, Nani Solares, "has no medical background, experience or expertise beyond that of a clinical psychotherapist and her impressions

about ANGIE are based solely on Plaintiffs' self-serving statements."[1] Id. at 6. Lastly, the defendants argue that the "Plaintiffs have neither alleged nor established that they are unable to take appropriate precautions to transport ANGIE in their [m]inivan . . . to a new residence during the pandemic" and note that the plaintiffs have been transporting Angie Alonso to medical appointments during the COVID-19 pandemic. Id.

The Court should deny the instant Motion for the same reasons stated in its prior Order (DE# 25). The Anti-Injunction Act prohibits the Court from granting the requested relief because the state court proceeding was filed first. The state court acquired in rem jurisdiction over the property on February 1, 2018 when the defendants commenced an eviction action in the County Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. 2018-000236-CC-21. The instant federal action was filed over a year later, on May 6, 2019. See Complaint (DE# 1, 5/6/19).[2] Therefore, this Court is without authority to stay or enjoin the state court action.

Even if the Anti-Injunction Act did not prohibit the Court from granting relief, the plaintiffs have failed to meet all the elements necessary for the issuance of a temporary restraining order or a preliminary injunction. At a minimum, the plaintiffs have not shown irreparable harm.

---

[1] Ms. Solares is the subject of a separate Daubert motion filed by the defendants. See Defendants' Daubert Motion Seeking to Strike the Designation of Nani Solares, M.S. as an Expert Witness and Preclude the Use and/or Presentation of Her Opinions and Expert Witness Report at Trial or for Other Purposes (DE# 393, 11/30/20). That motion has not been fully briefed.

[2] The plaintiffs filed two additional cases in federal court. Case No. 18-cv-20537-UU Alonso v. 245 C & C, LLC et al. filed on February 12, 2018 and case no. 19-cv-21045-CMA Alonso Cano v. 245 C & C, LLC et al. filed on March 19, 2019. Those cases were dismissed without prejudice and, in any event, were filed after the state court action.

"It is well-established that a preliminary injunction cannot be granted absent a showing of irreparable harm." Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C., 199 F. Supp. 2d 1271, 1291 (M.D. Fla. 2001); United States v. Jefferson Cty., 720 F.2d 1511, 1519 (11th Cir. 1983) (affirming denial of preliminary injunction where movant failed to show irreparable harm). Moreover, "self-serving assertions unsupported by concrete facts are insufficient to establish irreparable harm." LaTele Television, C.A. v. Telemundo Commc'ns Grp., LLC, No. 15-11792, 2016 WL 6471201, at *5 (11th Cir. May 26, 2016) (per curiam).

This Court has stated that:

> [i]rreparable harm "must be neither remote nor speculative, but actual and imminent." Northeastern Florida Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990). A preliminary injunction "will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (3d ed.).

AvMed, Inc. v. Transaction Applications Grp., Inc., No. 20-21838-CIV, 2020 WL 2513546, at *2 (S.D. Fla. May 15, 2020). In AvMed, this Court found that the "[plaintiff's] potential loss of future business [could not] be considered irreparable because that injury [was] too remote and contingent on possible future events." Id. Similarly here, the plaintiffs' alleged harms are too remote and speculative to establish a showing of irreparable harm.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully RECOMMENDS that the "Urgent Motion" to (1) Stop Plaintiffs' Actual and Imminent Eviction or in the Alternative, (2) Request a Temporary Restraining Order and/or a Preliminary Injunction to Maintain the Status Quo During COVID 19 Pandemic (DE# 384, 11/20/20) be **DENIED**.

9

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **15th** day of December, 2020.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE